**No. 25-20292**

# In the United States Court of Appeals
# For the Fifth Circuit

LOURDES RIVERA,

*Plaintiff - Appellant*,

v.

ROSS DRESS FOR LESS, INC.

*Defendant - Appellee*.

Appeal from the United States District Court for the
Southern District of Texas, Houston Division; No. 4:22-CV-74

## BRIEF OF APPELLANT

| | |
|---|---|
| Scott P. Armstrong | Joshua D. Lee |
| Texas Bar No. 24092050 | Texas Bar No. 24100139 |
| David D. Bradle | Cullen McDonald, *Counsel of Record* |
| Texas Bar No. 24120020 | Texas Bar No. 24130681 |
| ARMSTRONG LEE & BAKER LLP | ARMSTRONG LEE & BAKER LLP |
| 2800 North Loop West, Suite 900 | 2800 North Loop West, Suite 900 |
| Houston, TX 77092 | Houston, TX 77092 |
| (832) 709-1125 | (832) 709-1125 |
| (832) 709-1124 (Fax) | (832) 709-1124 (Fax) |
| *Trial Counsel* | *Appellate Counsel* |

COUNSEL FOR APPELLANT

**October 30, 2025**

# CERTIFICATE OF INTERESTED PERSONS

## No. 25-20292

### *Lourdes Rivera v. Ross Dress for Less, Inc.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Plaintiff-Appellant** | **Defendant-Appellee:** |
|---|---|
| Lourdes Rivera | Ross Dress for Less, Inc. |

| **Counsel for Plaintiff-Appellant**: | **Counsel for Defendant-Appellee**: |
|---|---|
| Armstrong Lee & Baker LLP | Ashcraft Law Firm |
| Scott P. Armstrong | William O. Ashcraft |
| Joshua D. Lee | |
| David D. Bradle | **Parent Company of Appellee:** |
| Cullen McDonald | Ross Stores, Inc. |

**District Judge:**
Hon. George C. Hanks, Jr.

**Magistrate Judge:**
Hon. Andrew M. Edison

**Arbitrator:**
Hon. Carlos Lopez
Thompson & Horton LLP

By: */s/ Cullen McDonald*
Cullen McDonald
Counsel of Record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

This is a personal injury case arising from injuries suffered by Lourdes Rivera ("**Rivera**") while working for Ross Dress for Less, Inc. ("**Ross**") as a retail associate. A heavy metal rack fell on Rivera, causing severe injuries to her back. Rivera filed suit alleging negligence. Ross filed an answer in state court before removing the action to federal court. Ross actively litigated the case for over 14 months.

After the statute of limitations expired, Ross disclosed the existence of an arbitration provision purportedly signed by Rivera. The federal court entered an order compelling Ross and Rivera to arbitration and finding that Ross did not waive its right to arbitration. The district court erred by granting Ross's motion to compel arbitration because Ross's litigation conduct amounted to a substantial invocation of the judicial process. After the parties were ordered to arbitration, the arbitrator exceeded his authority by granting summary judgment on limitations. Rivera complied with the arbitration agreement's safe harbor clause, which gave her 30 days in which to timely file her complaint in arbitration.

This appeal concerns novel issues of arbitration law following the United States Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022), and the Fifth Circuit's decision in *Garcia v. Fuentes Rest. Mgmt. Serv., Inc.*, 141 F.4th 671 (5th Cir. 2025). Therefore, Appellant requests oral argument to assist the Panel in reaching its holding.

2

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ......................................................1

STATEMENT REGARDING ORAL ARGUMENT ...............................................2

TABLE OF AUTHORITIES ...............................................................................4

JURISDICTIONAL STATEMENT .......................................................................6

ISSUES PRESENTED........................................................................................7

STATEMENT OF THE CASE..............................................................................8

SUMMARY OF THE ARGUMENT ....................................................................10

ARGUMENT ...................................................................................................13

I.      Standard of Review.........................................................................13

II.     The district court erred by compelling arbitration..........................14

    A.      Ross waived its right to arbitration by substantially invoking the judicial process for fourteen months. .............................14

    B.      Ross weaponized the judicial process to conceal its arbitration defense until after the statute of limitations had run..........................21

III.    Alternatively, the Court should vacate the arbitrator's award. .....25

    A.      Rivera's claim was timely filed in arbitration under the Agreement's safe harbor provision. ..................................25

    B.      The district court determined that arbitration was not waived.................................................................................27

CONCLUSION AND PRAYER FOR RELIEF......................................................31

CERTIFICATE OF SERVICE ...........................................................................32

CERTIFICATE OF COMPLIANCE....................................................................33

# TABLE OF AUTHORITIES

**Cases**

*Addicks Servs., Inc. v. GGP-Bridgeland, LP*,
    596 F.3d 286 (5th Cir. 2010) ........................................................................ 16, 20

*Allied World Ins. Co. v. Am. W. Steel, LLC*,
    No. CV H-17-3608, 2018 WL 6602153
    (S.D. Tex. Dec. 17, 2018) ....................................................................................29

*C & H Nationwide v. Norwest Bank Tex. N.A.*,
    208 F.3d 490 (5th Cir. 2000) ................................................................................29

*Commc'ns Workers of Am., AFL-CIO v. Sw. Bell Tel. Co.*,
    953 F.3d 822 (5th Cir. 2020) ................................................................................30

*Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*,
    889 F.2d 599 (5th Cir. 1989) ................................................................................30

*Garcia v. Fuentes Rest. Mgmt. Servs. Inc.*,
    141 F.4th 671 (5th Cir. 2025) ........................................... 13, 14, 15, 20, 21, 22, 23

*Gonzalez v. Mission American Ins. Co.*,
    795 S.W.2d 734 (Tex. 1990) ................................................................................28

*Harvey v. Grey Wolf Drilling Co.*,
    542 F.3d 1077 (5th Cir. 2008) ................................................................................6

*In re D. Wilson Const. Co.*,
    196 S.W.3d 774 (Tex. 2006) ................................................................................15

*In re Olshan Found. Repair Co., LLC*,
    328 S.W.3d 883 (Tex. 2010) ................................................................................29

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*,
    535 U.S. 613 (2002) ............................................................................................15

*Lincoln Prop. Co. v. Roche*,
    546 U.S. 81 (2005) ..............................................................................................15

*Manguno v. Prudential Prop. & Cas. Ins. Co.*,
    276 F.3d 720 (5th Cir. 2002) ................................................................................14

4

*Morgan v. Sundance, Inc.*,
  596 U.S. 411 (2022) ................................................................... 2, 13, 22

*Nat'l Gypsum Co. v. Oil, Chemical and Atomic Workers Intern. Union*,
  147 F.3d 399 (5th Cir. 1998).................................................................30

*Pacheco v. PCM Const. Servs., L.L.C.*,
  602 F. App'x 945 (5th Cir. 2015) .........................................................17

*Reece Albert, Inc. v. Contractor's Serv. Co.*,
  No. 01-06-00700-CV, 2007 WL 4387283
  (Tex. App.—Houston [1st Dist.] Dec. 13, 2007, pet. denied) ...........26

*Sanchez v. Gen. Elec. Co.*,
  196 F. Supp. 3d 726 (S.D. Tex. 2016) .................................................29

*Walker v. J.C. Bradford & Co.*,
  938 F.2d 575 (5th Cir. 1991)................................................................21

**Statutes**

28 U.S.C. § 1291 ....................................................................................6

28 U.S.C. § 1332 ....................................................................................6

28 U.S.C. § 1441 ..................................................................................15

9 U.S.C. § 10 ........................................................................................25

**Other Authorities**

*Invocation*, Black's Law Dictionary (12th ed. 2024) ...........................23

**Rules**

Fed. R. App. P. 32..................................................................................33

Fed. R. App. P. 4....................................................................................6

## JURISDICTIONAL STATEMENT

### District Court's Jurisdiction

The district court asserted diversity jurisdiction.   28 U.S.C.  § 1332(a)(2). Plaintiff Lourdes Rivera is a Texas citizen.  Defendant Ross Dress for Less, Inc. is a corporation incorporated in Delaware and its principal place of business is in California.  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). The amount in controversy exceeded $75,000.

Personal jurisdiction is not disputed.

### Appellate Jurisdiction

Rivera timely noticed an appeal from a final judgment which disposed of all claims.  28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1)(A).  The judgment was entered on June 18, 2025.  ROA.1236.  The notice was filed on July 9, 2025, which was before the 30th day after the entry of the judgment.  ROA.1245.

**ISSUES PRESENTED**

The first issue is whether the district court erred in compelling arbitration where Ross substantially invoked the judicial process by *i.*) removing the case to federal court, *ii.*) litigating Rivera's claims for fourteen months and conducting extensive discovery, *iii.*) repeatedly representing its intention to try the case, including in a joint management report and in an agreed motion for a continuance of the trial date, *iv.*) waiting to invoke arbitration and stay pre-trial deadlines until after Rivera designated her testifying experts' opinions, and *v.*) weaponizing the judicial process to delay disclosure of the arbitration agreement, compel arbitration, and successfully seek dismissal on limitations grounds by asserting its arbitration defense only after the statute of limitations period had expired.

The second issue is whether, in the alternative, the arbitrator exceeded his authority by dismissing Rivera's claims on Ross's limitations defense where *i.*) the arbitration agreement provided safe harbor to file a claim in arbitration within 30 days of a court order compelling the parties to arbitrate the claims and *ii.*) Rivera complied with the terms of the safe-harbor provision.

**STATEMENT OF THE CASE**

This appeal arises from a personal injury lawsuit. Rivera filed suit against her employer Ross after a workplace accident. ROA.12. On May 21, 2020, while working as a retail associate at a dd's DISCOUNTS store operated by Ross, Rivera was injured when a heavy metal clothing rack — an R-22 rack — fell from an elevated position in the stockroom and struck her lower back. ROA.13. The R-22 rack had been placed atop a mobile conveyor belt (a "NestaFlex") by the store's general manager. ROA.1019-20. The rack fell 8 feet and struck Rivera, knocking her to the ground. ROA.298. Rivera sustained serious spinal injuries, underwent lumbar fusion surgery, and continues to suffer pain. ROA.14; ROA.68.

On December 9, 2021, Rivera filed suit in Texas state court alleging negligence and gross negligence against Ross, who was not a subscriber to worker's compensation. ROA.12. Ross answered the suit and subsequently removed the case to federal court. ROA.6; ROA.20. For the next 14 months, Ross actively litigated the case with the intent to proceed to trial, while concealing the existence of an arbitration agreement. ROA.1-3; *compare* ROA.20, *with* ROA.86. Ross engaged in extensive discovery, participated in depositions, exchanged thousands of pages of documents, and jointly moved for a trial continuance. ROA.67-71. Ross did not assert the existence of an arbitration agreement or seek to compel arbitration during this period.

The statute of limitations for Rivera's claims expired on May 21, 2022 — two years after her injury. ROA.13. Ross produced the Summary Plan Description, including the arbitration agreement at issue, for the first time on July 22, 2022, after the expiration of the statute of limitations. ROA.555. The parties then moved for a joint continuance of the trial setting to conduct additional discovery. ROA.64.

On March 22, 2023, Ross amended its answer for the first time, alleging that Rivera's claims were subject to arbitration. ROA.93. Ross also filed a motion to compel arbitration. ROA.95-122. The Court considered the motion, Rivera's response, and Ross's reply. On September 26, 2023, the Court granted Ross's motion to compel arbitration. ROA.1161-76.

Rivera timely filed her arbitration demand within 30 days of the district court's order, relying on the arbitration agreement's safe harbor provision. ROA.1198. That provision provided that a claimant may file an action in arbitration within 30 days of a court order compelling arbitration. Notwithstanding this provision, the arbitrator granted Ross's motion for summary judgment on limitations, holding that Rivera's claims were time-barred. ROA.1183.

This appeal followed.

9

## SUMMARY OF THE ARGUMENT

Ross commenced this action by removing the case and depriving Rivera of her first choice of state-court venue, making no mention of arbitration in its answer. Ross then waited for 14 months to first raise arbitration as a defense — after the expiration of the limitations period.

In response to the district court's case management order, Ross had the opportunity to disclose any "suitable" alternative dispute resolution techniques. The parties discussed mediation, but at no time did Ross disclose that Rivera's claims were subject to an arbitration agreement.

For the next year, Ross participated in substantial discovery, including multiple depositions and the exchange of thousands of pages of documents. Rivera disclosed her testifying experts and produced their reports. At that time, Ross requested — and Rivera agreed — to a continuance of the trial setting, ostensibly to accommodate Ross's retaining of "specialized" medical experts who could respond to the opinions of Rivera's experts and "to prepare for trial." ROA.68-70

Within weeks of the order granting the continuance, Ross amended its answer to assert arbitration for the first time. It then moved to compel arbitration and stay pretrial deadlines, including the rebuttal designation of its own testifying experts.

Under the totality of the circumstances, Ross's acts were intentionally taken, and, together, constitute abandonment of the right to arbitrate.

Moreover, Ross strategically withheld the arbitration agreement until after the limitations period expired. It only disclosed its intention to compel arbitration after the initial deadline to file a claim in arbitration had closed concurrently with the expiration of the limitations period. Ross used this delay to seek a dismissal of Rivera's claim in the arbitration proceedings. It succeeded. This tactic, too, was a substantial invocation of the judicial process by harnessing delay in the federal proceedings to obtain dispositive relief. Rivera was unaware that this was Ross's scheme, or that her claims may be subject to arbitration, until it asserted arbitration as an affirmative defense for the first time 14 months after removing the action to federal court.

Alternatively, the arbitrator exceeded his authority in granting Ross's motion for summary judgment on limitations. The arbitration agreement contained a "safe harbor" provision providing a 30-day window following the district court's order in which to timely file claims in arbitration. Rivera timely filed her case after the district court ordered that the case be arbitrated.

The only dispute in interpreting the safe harbor clause was whether the district court "has determined that the claim is not void and deemed waived." ROA.181. The agreement defined "covered claims" as including the determination of whether a claim is arbitrable and enforceable. Therefore, in determining that Ross had not

waived its right to arbitrate, the district court satisfied this clause and thereby brought the case within the scope of the safe harbor clause.

Any other interpretation is unworkable because it would have required an impermissible advisory opinion on the merits of Rivera's claims (*i.e.*, whether her tort claims were waived), which were not before the district court when it decided the arbitrability of the case.  Therefore, the arbitrator exceeded his authority in determining that the safe harbor clause did not apply and that Rivera's claims were not timely filed.

Therefore, this Court should reverse and remand for further proceedings, including a trial on the merits.

## ARGUMENT

### I.    Standard of Review

The court reviews a district court's determination of a motion to compel arbitration de novo. *Garcia v. Fuentes Rest. Mgmt. Servs. Inc.*, 141 F.4th 671, 677 (5th Cir. 2025). "Any factual findings underlying the district court's determination are reviewed for clear error." *Id.*

In *Garcia*, this Court recently considered whether a party has waived their right to arbitrate by "substantially invoking the judicial process." *Id.* at 677–81. This Court "no longer consider[s] prejudice" and "there is no presumption against waiver." *Id.* at 675–77 (relying on *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022)). Instead, the relevant inquiry is "whether the party knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Id.* at 676.

In making its determination, the Court considers the "totality of the circumstances." *Id.* at 677. "[W]hile some facts were traditionally more reflective of prejudice — such as participation in discovery — they may still contribute to a finding that a party invoked the judicial process." *Id.* (internal citation omitted). "Moreover, whether a party waived its right to arbitrate is necessarily fact-intensive; thus, a fact that weighs in favor of waiver in one case may not carry any weight in another." *Id.*

13

## II. The district court erred by compelling arbitration.

When the district court ordered the case to arbitration it did not have the benefit of this Court's recent opinion in *Garcia*. Because the undisputed facts show that Appellee waived its right to arbitration, the Court should reverse the district court's order compelling arbitration.

In broad strokes, Ross waived its right to arbitrate by substantially invoking the judicial process in two ways: 1) by engaging in litigation conduct in a manner inconsistent with the right to arbitration, and 2) by weaponizing the judicial process to ultimately seek dismissal on limitations in the arbitration proceedings by obfuscating its arbitration scheme in the district court.

### A. Ross waived its right to arbitration by substantially invoking the judicial process for fourteen months.

The totality of the circumstances reflects Ross's unequivocal intent to try, rather than arbitrate, this case. For 14 months of active litigation from the date of removal, Ross never mentioned the existence of an arbitration agreement, or an arbitration defense, until it filed its amended answer after limitations had expired. ROA.1-3; *compare* ROA.20, *with* ROA.86.

**Removal**. Ross commenced this action by fixing venue in the district court. ROA.6. In doing so, Ross bore the burden to prove that federal jurisdiction existed and removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

14

Ross could have chosen to move to compel arbitration pursuant to the FAA in the state court. *E.g.*, *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (reversing denial of motion to compel arbitration and ordering arbitration pursuant to FAA). Instead, Ross divested Rivera of her first choice of venue in the Harris County state court. ROA.6. In doing so, Ross "voluntarily invoked the federal court's jurisdiction" by removing the case pursuant to 28 U.S.C. § 1441. *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620 (2002); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). The decision to remove and fix venue in federal court was the first act of many reflecting Ross's waiver of arbitration.

**Joint Management Report**. Although "routine scheduling orders and discovery continuances" do not necessarily "move the needle" on waiver, this Court admonished in *Garcia* that "context controls." *Garcia*, 141 F.4th at 678, 680. The parties submitted a Joint Management Report, making no mention of arbitration. ROA.40. Pursuant to the district court's order, Rivera and Ross jointly made the following disclosures, among others:

14. **Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.**

    The parties believe that settlement negotiations would be premature at this time. However, the parties should be in a position to engage in informal settlement negotiations after written discovery has been exchanged and depositions of the parties have been conducted. In the event informal settlement

negotiations do not resolve this matter, the parties agree to mediate this case before an agreed upon mediator.

**16. From the attorneys' discussion with the client, state the *alternative dispute resolution techniques* that are reasonably suitable.**

In the event informal settlement negotiations do not resolve this matter, the parties agree to mediate this case before an agreed upon mediator.

ROA.45-46. Notably, Ross never disclosed arbitration as a vehicle for alternative dispute resolution in response to the express inquiry whether there are "alternative dispute resolution techniques that are reasonably suitable" to resolve the case. Ross never disclosed arbitration as a defense or indicated that that a motion to compel arbitration would be asserted, despite having the agreement in its possession and having ample opportunity to do so. ROA.581 (testifying "Mandatory arbitration has been in effect at Ross . . . since February 1, 2013").

Ross's silence is significant. This Court has held, "Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver." *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 299 (5th Cir. 2010). Had Ross intended to assert arbitration as a defense, it should have made its intent known within the first 14 months of litigation. Instead, it chose to remain silent and, through its silence, demonstrated its intent to try the case to a jury:

**18. State whether a jury demand has been made and if it was made on time.**

A jury demand was timely made.

16

**20.** **List pending motions that could be ruled on at the initial pre-trial and scheduling conference.**

None.

**21.** **List other motions pending.**

None other than the Joint Motion for Entry of Agreed Protective Order which was simultaneously filed with this Joint Report.

**22.** **Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.**

None.

ROA.46.

**Discovery**.   This is not a case where Ross's participation in litigation was "relatively limited."  *See Pacheco v. PCM Const. Servs., L.L.C.*, 602 F. App'x 945, 948 (5th Cir. 2015).   When Ross moved to compel arbitration, the parties had completed substantial fact discovery, including:

- Service of initial disclosures by both parties

- Ross's service of Requests for Production and Interrogatories on Rivera

- Rivera's service of Requests for Production, Interrogatories, and Requests for Admissions on Ross

- The production of over 2,000 pages of documents

- Ross's deposition of Plaintiff Lourdes Rivera

- Rivera's deposition of Sergio Alvarez, Ross employee

- Rivera's deposition of Sonia Ortega, Ross employee

*See* ROA.67-68.

17

The discovery record is replete with examples of Ross's intent to resolve the action through a trial, rather than arbitration. At her deposition, Ross's counsel admonished Rivera directly that her answers could be used against her at trial:

Q. This deposition will be transcribed by the reporter, and everything that is said here today will be recorded. *At the trial*, all the testimony you give will be available in booklet form, and if I ask you the same questions then that I ask you here today and if your answers *at the trial* differ from the answers you give here today, you may expect to be -- to be asked to account for the difference in your answers. Do you understand this?

A. Yes.

ROA.295.

Indeed, at every deposition, Ross's counsel expressed the intention to reserve further examination until trial. ROA.520 ("We'll reserve the remainder of our questions until time of trial."); ROA.1084 ("Mr. Alvarez, my questioning is going to be very brief, and then we'll reserve the rest of our questions for time of trial.").

**Plaintiff's Experts**. Rivera relied on Ross's expressions of intent that the case would be tried. Rivera timely designated her testifying experts and produced lengthy and detailed reports, as noted in the first motion for continuance drafted by Ross's counsel. *See* ROA.68-69; ROA.1000-01. In apparent response to the production of these reports, Ross requested that Rivera agree to a continuance of the trial, ostensibly to give Ross more time to designate experts. ROA.68-69. Rivera agreed to accommodate Ross's request for additional time. *Id.*

18

**Motion for Continuance**. To avoid having to designate its experts under the current schedule, Ross requested, and Rivera agreed, to a continuance of the trial setting to accommodate Ross's retention of "specialized medical" and "other" experts, and to "have a full opportunity to develop evidence and the time needed to complete discovery on their claims and defenses and to take any further actions necessary *to prepare for trial*." ROA.69-70. In the motion, the parties stated that "[d]espite the diligence exercised by the parties in conducting discovery, additional discovery remains to be conducted regarding important matters . . . that are necessary for the parties *to prepare this case for trial*." ROA.68. Rivera's original petition previously notified Ross of the severity of her injuries. ROA.17.

In the motion for continuance, Ross made no mention of its intention to invoke arbitration as a defense or its failure to retain medical experts over the preceding year. Instead, the motion concluded, "By this Motion, Rivera and Ross Dress for Less seek to make efficient use of judicial resources by eliminating the need to seek additional extensions in the future." ROA.71.

Notwithstanding the assertions that it needed time to hire "specialized experts," Ross had no intention to designate experts in the federal proceedings, as evidenced by its motion to stay the pretrial deadlines after it filed its motion to compel arbitration shortly after the continuance was granted. ROA.1149.

19

The procedural history shows that Ross planned to amend its answer to assert arbitration after obtaining a continuance, and to deploy a strategy of using its delay in the disclosure of the arbitration agreement to assert a limitations defense in the arbitration proceedings. Ross's request for a continuance was likely pretextual to provide the opportunity to put its plan into action.

Although Ross's counsel alleged in the joint motion that "the complexity of this case recently increased and Rivera seeks to recover significant damages from Ross," citing Ross's lumbar fusion surgery, Ross was on notice of the significance of Rivera's injuries for 14 months. *See* ROA.13-14 (pleading damages in excess of $1,000,000 and that Rivera's injuries required surgery in original petition).

**Ross waived arbitration**. Generously construed, Ross's attempt to compel arbitration after obtaining a continuance amounts to a disfavored attempt "to switch judicial horses in midstream." *Garcia*, 141 F.4th at 680. For 14 months, Ross "did not assert an arbitration defense in their answer," "subsequently engaged in typical litigative processes," including substantial discovery, and through its silence and inaction "show[ed] an intention to yield the known right" to arbitrate. *Id.* at 680–81; *Addicks*, 596 F.3d at 299. There was no reason for Ross to wait 14 months before asserting arbitration (except to harness the delay in furtherance of its limitations argument, *see infra*).

Ross knew that "mandatory arbitration has been in effect at Ross . . . *since February 1, 2013*." ROA.581. The delay in seeking to compel arbitration was entirely of Ross's making. *See Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) (finding no waiver after 13-month delay, but only where movant was "not entirely responsible for the delay" and had only participated in "minimal discovery").

Unlike in *Walker*, Ross engaged in substantial fact discovery, sought arbitration only after Rivera had revealed the opinions of her testifying experts, and had every opportunity to invoke arbitration at the case's outset. *See id.* at 577 ("The decision whether to arbitrate is one best made at the onset of the case, and not part of the way through . . . ."). Thus, Ross's "acts were intentionally taken, and, together, constitute abandonment of the right to arbitrate." *Garcia*, 141 F.4th at 680–81.

### B.    Ross weaponized the judicial process to conceal its arbitration defense until after the statute of limitations had run.

Ross also invoked the judicial process by weaponizing delay in the federal proceeding to seek summary judgment in arbitration using a limitations defense. The arbitrator erred in granting summary judgment. *See* Part III, below. Nevertheless, the district court should not have compelled arbitration because Ross invoked the judicial process in deploying this scheme.

21

Rivera timely filed her lawsuit in state court on December 9, 2021. ROA.12. Ross answered on December 22, 2021. ROA.20. When Ross removed the action on January 7, 2022, it did not plead arbitration as an affirmative defense. ROA.20; *see Morgan*, 596 U.S. at 414 (noting Sundance's failure to assert arbitration as affirmative defense); *Garcia*, 141 F.4th at 679 (same).

The statute of limitations for Rivera's claims expired on May 21, 2022 — two years after her injury. ROA.13. Ross withheld the arbitration agreement and did not produce it to Rivera until July 22, 2022, after limitations expired. ROA.555. Rivera was unaware of its existence or its applicability to her claims. ROA.512-13.

After substantial discovery was completed and Rivera had disclosed her experts' reports, Ross sought a continuance of the trial to which Rivera agreed. ROA.64. After it secured the continuance of the trial, Ross then filed an amended answer, pleading arbitration as a defense for the first time on March 22, 2023. ROA.93.

Ross then sought to compel arbitration. ROA.95. In response, Rivera disputed knowledge of an arbitration agreement or that her claims were subject to arbitration. ROA.512-13. The district court granted Ross's motion. ROA.1161. Rivera promptly filed her claims in arbitration. ROA.1183.

In the arbitration proceeding, Ross moved for summary judgment, arguing that limitations barred Rivera's claims — despite her lack of knowledge of the existence of the arbitration agreement. ROA.1181. The arbitrator granted the motion for summary judgment, holding that Rivera's claims "are not timely because she did not file her Demand for Arbitration within two years of the date her cause of action accrued." ROA.1182.

After fixing venue in the district court through removal, Ross manipulated the judicial process by withholding the arbitration agreement and concealing its intention to pursue arbitration until limitations had expired. Ross ultimately succeeded in obtaining dismissal using this concealment scheme. This, too, was a substantial invocation of the judicial process because Ross used delay in the federal proceedings to run out the clock on the statute of limitations.[1] *See* ROA.64, 74, 75.

Although this Court stated in *Garcia* that it will generally "evaluate the issue of delay "objectively, independent of motivation," the Court also noted that it will "still find value in an objective consideration of the duration of the proceedings when determining whether there has been a substantial invocation of the judicial process. *Garcia*, 141 F.4th at 680 & n.8. "[I]t is the activity *accompanying* the delay that will usually invoke the judicial process to sufficiently waive a right to arbitrate." *Id.* at 680 n.9 (emphasis in original).

---

[1] *Invocation*, Black's Law Dictionary (12th ed. 2024) ("2. *The act of . . . using a legal right*").

Thus, the Court should give weight to the "problematic" and "inherent unfairness" that occurs "when a party 'forces its opponent to litigate' a dispute and later seeks to arbitrate it," as Ross has done here, in its substantial-invocation analysis. *Id.* at 680 n.8 (cleaned up). That is because "[d]espite the exclusion of the prejudice prong, we have an interest in preventing parties from receiving 'a second bite at the apple through arbitration.'" *Id.* Considering the totality of the circumstances, the Court should find that Ross waived its right to arbitrate and reverse the district court's order compelling arbitration.

**III.    Alternatively, the Court should vacate the arbitrator's award.**

Under the FAA, an arbitration award may be vacated "[w]here the arbitrator exceeded its powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  The Arbitrator exceeded his authority under the FAA in granting Ross's motion for summary judgment on limitations.

Although after the expiration of limitations, Rivera timely filed her complaint in arbitration pursuant to the "safe harbor" provision of the arbitration agreement.  ROA.1198; ROA.181.  That provision authorized Rivera to file a claim in arbitration outside of the limitations period so long as it was filed within 30 days of the district court's order compelling arbitration.  Because the Arbitrator lacked authority under the agreement to grant the motion for summary judgment, the Court should vacate the Arbitrator's award and remand for further proceedings.

### A.    Rivera's claim was timely filed in arbitration under the Agreement's safe harbor provision.

The Agreement provided the following procedures for initiating arbitration and providing written notice of claims:

(a)    **Required Notice of All Claims**: When a party seeks arbitration, such party must give written notice of any claim to the American Arbitration Association and the other party within the applicable statute of limitations for such claim.  The day the act complained of occurred will be counted for purposes of determining the applicable period.  If such notice is not given timely and in the manner described above, the claim shall be void and deemed

25

waived. **The filing of a lawsuit will not toll the running of the applicable statute of limitations to request arbitration of a claim, nor will the doctrine of equitable tolling apply to extend the limitations period for the party to request arbitration**.

ROA.180 (emphasis in original).

Ross relied on this language in arbitration to argue that Rivera's action was untimely. Ross's reliance was misplaced because the safe harbor provision applied to render Rivera's claims as timely filed:

(3)    If after expiration of the applicable statute of limitation (i) a court order exists for the parties to arbitrate, and (ii) such court or arbitrator for whatever reason has determined that the claim is not void and deemed waived, then *the party that is compelled to arbitrate must initiate a claim for arbitration regarding such claim with the AAA and serve the other party within 30 days of the* statute of limitations date (or *court order date, if later*) [or][2] the party's claim shall be void and deemed waived. Such notice must be given in the manner described above.

ROA.181 (emphasis added).

The clear intent of the safe harbor provision is to provide a claimant with additional time to file an action in arbitration where a court has ruled that a dispute must be resolved in arbitration and that court ruling is made after the expiration of limitations.

---

[2] The agreement appeared to omit an "or," which would give effect to the parties' intent. The Arbitrator reformed this scrivener's error to conform the contract to the parties' intent. ROA.1183; *e.g., Reece Albert, Inc. v. Contractor's Serv. Co.*, No. 01-06-00700-CV, 2007 WL 4387283, at *4 (Tex. App.—Houston [1st Dist.] Dec. 13, 2007, pet. denied).

The arbitrator recognized it was undisputed that Rivera filed her complaint in arbitration within 30 days of the district court's order. ROA.1183. Therefore, her claims fell within the safe harbor provision, and her claims were timely.

## B. The district court determined that arbitration was not waived.

The only dispute before the arbitrator was the meaning of the clause: if "(ii) such court or arbitrator for whatever reason has determined that the claim is not void and deemed waived." ROA.1184.

The proper interpretation of this clause is that the district court must find that the parties have not waived arbitration. That is precisely what the district court held. ROA.1176. After undertaking a "fact-specific determination," the court held that Ross had not waived its right to seek arbitration. *Id.* This finding satisfied the clause that the court "has determined that the claim is not void and deemed waived." ROA.181.

The safe harbor provision's reference to a "claim" that is determined "not void and deemed waived" necessarily included a determination of whether the case is arbitrable. The agreement expressly defined "Covered Claims" to include:

> (1) *any legal or equitable claim* or dispute *relating to enforcement or interpretation of the arbitration provisions* in a Receipt, Safety Pledge and Arbitration Acknowledgement form, an Associate training program, or this Policy; and . . . (3) *The determination of whether a claim is covered by this Policy*.

ROA.179-80 (emphasis added).

27

The district court's holdings *i.*) that the arbitration agreement was enforceable and *ii.*) that Ross had not waived its right to arbitration implicated both definitions of a "covered claim." By ruling that Ross did not waive its right to seek arbitration, the district court determined that the "claim" — *i.e.*, that the arbitration provisions could be enforced, and that Rivera's claims are covered by the Agreement — "is not void and deemed waived." ROA.1163 (interpreting "covered claims"); *id.* at 1168-72 (holding that the agreement is enforceable); *id.* at 1172-76 (holding that Ross had not waived arbitration).

Any uncertainty concerning the applicability of the safe harbor provision must be construed in Rivera's favor. Texas contract law is clear that, if there is any doubt about what constitutes a "claim" to activate the safe harbor provision, "the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used." *Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 73 (Tex. 1990). There is no dispute that Ross drafted the Agreement. ROA. 581. Therefore, the safe harbor provision's elements are met, and Rivera's action was timely.

Ross argued that — to satisfy the clause — the district court was required to determine whether *Rivera's tort claims* were void or deemed waived. ROA.1184. This interpretation lacks merit because it would require the district court to give an advisory opinion and render the agreement unconscionable in practice.

28

First, it would have been impossible for Rivera to obtain a ruling that her tort claims were neither void nor deemed waived because that question was not before the federal court when it decided arbitrability. *C & H Nationwide v. Norwest Bank Tex. N.A.*, 208 F.3d 490, 493 (5th Cir. 2000) ("Federal courts are not in the business of rendering advisory opinions."). The question of whether Rivera's tort claims were barred by limitations only ripened after she filed her complaint in arbitration and Ross moved for summary judgment. *See Sanchez v. Gen. Elec. Co.*, 196 F. Supp. 3d 726, 733 (S.D. Tex. 2016) (refusing to rule on issues "not ripe for decision and [noting federal courts] will not issue an advisory opinion").

Moreover, requiring Rivera to obtain an impossible ruling to invoke the protection of the safe harbor provision would be unconscionable in practice because it would have stripped her of any forum where she could "effectively vindicate her rights." *See In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 894 (Tex. 2010) (noting that imposition of excessive costs that would "prevent a litigant from effectively vindicating his or her rights in the arbitral forum" would render arbitration agreement unconscionable); *see also Allied World Ins. Co. v. Am. W. Steel, LLC*, No. CV H-17-3608, 2018 WL 6602153, at *3 (S.D. Tex. Dec. 17, 2018) (holding that objective impossibility of performance under Texas law excuses breach of contract).

29

The agreement offered safe harbor to complaints in arbitration filed after the expiration of limitations where a court ordered arbitration and determined that a claim is not waived.  All of the elements of the safe harbor provision were met and the Arbitrator was bound to follow the terms of the agreement.

By failing to properly apply the plain terms of the agreement, the Arbitrator exceeded his authority.  *Commc'ns Workers of Am., AFL-CIO v. Sw. Bell Tel. Co.*, 953 F.3d 822 (5th Cir. 2020) ("An arbitrator exceeds his authority when he 'ignore[s] the plain language of a contract.'"); *Nat'l Gypsum Co. v. Oil, Chemical and Atomic Workers Intern. Union*, 147 F.3d 399, 403 (5th Cir. 1998) (If arbitrator ignores or refuses to apply a contractual provision, the arbitrator exceeds the limitations of his mandate); *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989) ("Arbitral action contrary to express contractual provisions will not be respected.").  Therefore, the Court should vacate the arbitrator's award, reverse the district court, and remand for further proceedings.

## CONCLUSION AND PRAYER FOR RELIEF

The Court should reverse the District Court's judgment and remand for further proceedings and a trial on the merits.

Dated: <u>October 30, 2025</u>    Respectfully submitted,

**ARMSTRONG LEE & BAKER LLP**

By:  <u>*/s/ Cullen McDonald*</u>
      Joshua D. Lee
      Texas Bar No. 24100139
      Scott P. Armstrong
      Texas Bar No. 24092050
      David D. Bradle
      Texas Bar No. 24120020
      Cullen McDonald, *Counsel of Record*
      Texas Bar No. 24130681
2800 North Loop West, Ste. 900
Houston, Texas 77092
Telephone:  (832) 709-1124
Facsimile:   (832) 709-1125
service@armstronglee.com

**ATTORNEYS FOR APPELLANT**

31

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2025, a true and correct copy of the above and foregoing document was forwarded to all counsel of record by the Electronic Filing Service Provider, if registered, otherwise by email, as follows:

Ashcraft Law Firm
William O. Ashcraft
8105 Rasor Blvd. Ste 257
Plano, Texas 75024
*Counsel for Appellee*

By: /s/ *Cullen McDonald*
Cullen McDonald,
Counsel of Record for Appellant

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because: this brief contains 5,292 words, excluding the parts of the brief exempted by the Rules.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface requirements of Fed. R. App. P. 32(a)(6) because: this brief has been prepared in Times New Roman 14 pt. font, a proportionally spaced typeface.

By: ___*/s/ Cullen McDonald*___
Cullen McDonald,
Counsel of Record for Appellant

Dated: October 30, 2025